IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELSIE M. JONES | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 2:90-cv-02974 |
| CITY OF PHILADELPHIA, et al. | : | |

**SURRICK, J.**                                                                                            **APRIL 18, 2008**

### MEMORANDUM & ORDER

Presently before the Court is Plaintiff Kelsie Jones's pro se Motion for a New Trial. (Doc. No. 46.) For the following reasons, Plaintiff's Motion will be denied.

**I.    BACKGROUND**

This case was initially filed on April 30, 1990. On October 5, 1990 an Order was entered dismissing the case without prejudice. The case remained dormant until March 16, 2007 when it was reassigned to this Judge. (Doc. No. 13.) Plaintiff's Complaint contained fifteen counts alleging both federal and state law claims and seeking both compensatory damages and punitive damages for injuries sustained by Plaintiff. (*See* Doc. No. 1.) Plaintiff's Complaint named several Defendants, including the City of Philadelphia and its Police Department, former Police Commissioner Willie Williams, Officer Charles Johnson, and several John Doe Defendants. (*Id*.) On November 13, 2007, we entered an Order dismissing all claims except for the claim against Officer Charles Johnson for the use of excessive force. (Doc. No. 39.)

Plaintiff's remaining claim arises out of events that took place on November 4, 1989. On that date, Plaintiff was arrested on the charge of murder and related offenses. Plaintiff alleges that following his arrest, he was transported to Giuffre Medical Center in Philadelphia where he

received treatment for injuries sustained at the time of his arrest.  (Doc. No. 1 at ¶ 21.)  Plaintiff claims that as he was leaving Giuffre Medical Center, and out of fear for his life, he escaped, in handcuffs, and fled to the Raymond Rosen housing project.  (*Id*. at ¶ 22.)  It is undisputed that at the housing project Plaintiff came into contact with Defendant Police Officer Charles Johnson.  (*Id*. at ¶ 23; Doc. No. 21 at 3.)  Officer Johnson was on duty at the time and had received a call over the police radio concerning Plaintiff's escape.  He had also been alerted by a tenant in the housing project that plaintiff was in the hallway outside of her apartment.  Plaintiff suffered a gunshot to his abdomen while inside the apartment building.  (Doc. No. 1 at ¶ 25; Doc. No. 21 at 4.)

   A jury trial was held on November 14 and 15, 2007.  The jury returned a verdict in favor of Defendant Johnson.  Plaintiff, now acting pro se, seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  Plaintiff contends that Officer Johnson used excessive force while taking Plaintiff into custody when he pulled his gun on Plaintiff who was obviously in handcuffs.  Defendant contends that the gun accidently went off when Plaintiff struggled with Officer Johnson over the gun.

## II.   LEGAL STANDARD

   Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed.R.Civ.P. 59(a) (2005).  Rule 59(a) does not specify the bases on which a court may grant a new trial, but rather leaves the decision to the discretion of the district court.  *See Blancha v. Raymark Indus*., 972 F.2d 507, 512 (3d Cir.1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v.*

*Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).  Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence.  *See Maylie v. Nat'l R.R. Passenger Corp.*, 791 F.Supp. 477, 480 (E.D.Pa. 1992) (citations omitted).

The scope of the district court's discretion when adjudicating a Rule 59 motion depends on whether the motion is based on a prejudicial error of law or on a verdict alleged to be against the weight of the evidence.  *See Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993).  When the basis of the motion involves a matter within the trial court's sound discretion, such as the court's evidentiary rulings or points for charge to the jury, the trial court has wide latitude in deciding the motion.  *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921-22 (3d Cir. 1986); *see also Klein*, 992 F.2d at 1289-90.  The court must determine: (1) whether an error was in fact made; and (2) whether the error was so prejudicial that a refusal to grant a new trial would be inconsistent with substantial justice.  *Bhaya v. Westinghouse Elec. Corp.*, 709 F.Supp. 600, 601 (E.D.Pa. 1989).  When the verdict is alleged to be against the weight of the evidence, however, the district court's discretion to order a new trial is much narrower, *Klein*, 992 F.2d at 1290, and the "district court [is cautioned] not [to] substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'"  *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)). As a determination that a jury's verdict is against the weight of the evidence "effects a denigration of the jury system," a court may grant such motion "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991) (citing *EEOC v. Del. Dep't Health*, 865 F.2d 1408, 1413 (3d Cir. 1988)).

In addition, the type of case involved also factors into the scope of the court's discretion. When the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations. *Id.* at 1352; *see also Lind*, 278 F.2d at 90-91.

**III.    ANALYSIS**

Plaintiff's Motion states three reasons why he should be granted a new trial.

*A.    Alleged Misconduct of Plaintiff's Counsel*

Plaintiff alleges various grievances against his trial counsel. Plaintiff alleges that counsel misrepresented material facts to the Court "resulting in fraud [and] malpractice" which violated his constitutional rights of Due Process and Equal Protection. (Doc. No. 46 at 2.) Plaintiff alleges a "conflict of interest" between he and his counsel, and alleges several incidents in which his counsel was unresponsive or unwilling to take actions requested by him. (*Id.* at 3-4.) Plaintiff claims that his attorney refused to ask for certain cautionary jury instructions, and failed to provide Plaintiff with materials related to this litigation. (*Id.*) Finally, Plaintiff claims that his attorney forced him to sign an affidavit shortly before trial which constrained his direct testimony at trial.[1] (Doc. No. 49 at 3-4.)

It is certainly clear from Plaintiff's motion that he was not satisfied with the representation that he received throughout this case. However, Rule 59 is not the appropriate vehicle by which Plaintiff may seek redress of his grievances against his attorney. While Rule 59 provides the district court with wide discretion in granting new trials where appropriate, as noted

---

[1] The affidavit to which Plaintiff refers, (Doc. No. 35), was filed with the Court's permission on November 13, 2007. It was the only evidence offered by Plaintiff, in response to Defendant's summary judgment motion, that served to create a triable dispute of material fact.

above, the focus of our inquiry under Rule 59 is two broad categories of prejudicial error - a verdict against the weight of the evidence, and errors of law. Plaintiff's complaints regarding his representation in this civil matter do not fall into either category. We are aware of no authority that supports the proposition that relief may be granted under Rule 59 for ineffective assistance of counsel in a lawsuit under 42 U.S.C. § 1983. Plaintiff's remedy, if he is entitled to a remedy, lies elsewhere.

      B.    *Prejudice Related to Prison Garb*

Plaintiff alleges that he suffered undue prejudice warranting a new trial when the jury was allowed to see him in prison-issued clothing and with Pennsylvania State Troopers present in the courtroom during the course of this trial. We note first that Plaintiff primarily couches this argument as yet another grievance against his attorney, claiming that she failed to request either that Plaintiff be allowed to wear street clothes, or that the jury be offered a cautionary instruction not to draw prejudicial inferences from his appearance.[2] (Doc. No. 46 at 2-4.)

In a criminal prosecution a defendant may not be required to wear prison attire at trial. *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *U.S. v. Scarfo*, 850 F.2d 1015, 1024 (3d Cir. 1988). Whether the same rule applies to an incarcerated plaintiff prosecuting a civil suit is not clear. Several circuits have addressed this question in the context of physical restraints or shackles and suggested that the district court judges should exercise caution with regard to

---

[2] Since the issue was not raised at trial, there is nothing in the record that reflects what Plaintiff or the law enforcement officials that accompanied him were wearing. We do recall that during the trial, Plaintiff was not wearing a prison issued jumpsuit, the traditional prison garb, and the law enforcement officers that accompanied him were not in uniform. Whatever the actual attire was, it was clearly not so prejudicial that the Court felt compelled to raise the issue *sua sponte*.

prejudicial appearances when an incarcerated party litigates a civil suit before them. *See Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir. 1995) (failure to conduct inquiry into necessity of physical restraints on incarcerated plaintiff can amount to abuse of discretion); *Lemons v. Skidmore*, 985 F.2d 354, 356-59 (7th Cir. 1993) (incarcerated plaintiff entitled to appear in court without shackles, unless "extreme need" exists); *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992) ("the district court has a responsibility to ensure reasonable efforts are made to permit the inmate and the inmate's witnesses to appear without shackles during proceedings before the jury"); *Tyars v. Finner*, 709 F.2d 1274, 1285 (9th Cir. 1983) ("Shackling, restraining or even removing a respondent from the courtroom must be limited to cases urgently demanding that action").

    Certainly, shackles and physical restraints would suggest that a litigant is violent or dangerous and would create the potential for prejudice. By contrast wearing prison issued clothing or having law enforcement officers in the courtroom may be indicative of incarceration but does not carry the same potential for prejudice. Moreover, we note that any indication or inference of incarceration created by Plaintiff's clothing did not put before the jury facts that were not otherwise established by the evidence presented the course of the trial. *See Holloway*, 957 F.2d at 530 ("The shackles added nothing to the trial that was not already apparent from the nature of the case"). Plaintiff's own testimony at trial established that at the time of the interaction with Defendant Johnson which gave rise to his cause of action, he had been charged with a crime and was an escaped prisoner who was being aggressively pursued by the

Philadelphia police.[3]  Moreover, the jury heard that Plaintiff had been convicted of resisting arrest based upon the incident with Officer Johnson for which he was seeking compensation in this trial.  We are satisfied that, given the nature of the case and the nature of the testimony presented, any inference of incarceration created by Plaintiff's clothing was not so prejudicial as to require the granting of a new trial.  Accordingly, we will deny Plaintiff's request for a new trial based on his appearance in prison issued clothing, and the presence of law enforcement officers during his trial.

      C.      *Prejudice Related to Bozarth Testimony*

Finally, Plaintiff argues that he was unduly prejudiced when his attorney failed to ask for a cautionary jury instruction related to the testimony of Officer James Bozarth offered on behalf of Defendant.  (Doc. No. 46 at 4.)  The exact nature of Plaintiff's objection is not clear from his Motion.  Plaintiff apparently believes that the jury was improperly influenced by Officer Bozarth's testimony because Officer Bozarth had at some time shortly before trial given a statement at a press conference regarding the murder of an off-duty Philadelphia police officer.  We fail to see how a statement by Officer Bozarth at a press conference concerning a murdered police officer would improperly influence the jury's perception of his testimony in this matter regarding his direct involvement in Plaintiff's criminal case in 1990.  We therefore conclude that no grounds exist for the granting of a new trial to Plaintiff based on the testimony of Officer Bozarth.

An appropriate Order follows

---

[3] Pursuant to a motion *in limine* filed by Plaintiff, we ordered that the nature of the crimes for which Plaintiff received a life sentence, to wit, murder and related offenses, was not admissible at trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELSIE M. JONES | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 2:90-cv-02974 |
| CITY OF PHILADELPHIA, et al. | : | |

## **ORDER**

AND NOW, this 18th day of April, 2008, upon consideration of Plaintiff Kelsie Jones's Motion for a New Trial, (Doc. No. 46), it is ORDERED that Plaintiff's Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:


/s/ *R. Barclay Surrick*
    U.S. District Judge